IN THE UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

ANNA NGUYEN,

        Plaintiff,

   v.

MADISON MANAGEMENT
SERVICES, LLC,

        Defendant.

3:16-cv-00263-BR

OPINION AND ORDER

**JEFFREY A. LONG**
Oregon Consumer Law Center
4040 S.W. Douglas Way
Lake Oswego, OR 97035
(503) 635-7773

**MARC E. DANN**
The Dann Law Firm Co., LPA
P.O. Box 6031040
Cleveland, OH 44103
(216) 373-0539

       Attorneys for Plaintiff

**LUKASZ I. WOZNIAK**
Wright, Finlay & Zak, LLP
4665 MacArthur Court
Suite 280
Newport Beach, CA 92660
(949) 477-5050

       Attorneys for Defendant

1 – ORDER

**BROWN, Judge.**

This matter comes before the Court on Defendant Madison Management Services, LLC's Motion (#11) to Dismiss Plaintiff's First Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim.

For the reasons that follow, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion to Dismiss.

<u>BACKGROUND</u>

The following facts, which are undisputed unless otherwise noted, are taken from Plaintiff's First Amended Complaint (FAC) and the parties' materials related to Defendant's Motion to Dismiss.

In 2005 Plaintiff purchased real property located at 2933 N.E. 132nd Avenue, Portland, Oregon.  The property was secured by an adjustable-rate mortgage and deed of trust in favor of Ownit Mortgage Solutions, Inc., which is not a party to this action. Plaintiff's mortgage was subsequently acquired by Kondaur Capital Corporation, which also is not a party to this action.  At some point Plaintiff was unable to remain current on her payments.  In September 2012 Kondaur filed a foreclosure action against Plaintiff.

In August 2013 Kondaur transferred servicing rights on Plaintiff's mortgage to Defendant Madison.  Kondaur mailed to

Plaintiff a Notice of Assignment, Sale or Transfer of Servicing Rights (Kondaur Notice) dated August 16, 2013.  The Kondaur Notice stated the transfer to Defendant was effective August 31, 2013.  The Kondaur Notice reflected an address (967 US Highway 46, Suite 200, Kenvil, New Jersey) where Defendant would receive communications and payments from Plaintiff.  Plaintiff alleges she did not receive the Kondaur Notice because it was sent to a nonexistent address.[1]

On September 26, 2013, Defendant sent to Plaintiff a Notice of Assignment, Sale or Transfer of Servicing Rights (Defendant's Notice) indicating it was the new service provider for Plaintiff's loan.  Defendant's Notice identified Bridgestar Capital, Inc., as the new owner of Plaintiff's mortgage. Defendant's Notice stated as of October 10, 2013, Kondaur would no longer accept payments on Plaintiff's loan, and, although the Notice listed a contact telephone number for Defendant, it failed to indicate Defendant's hours of availability.  Defendant's Notice indicated any "qualified written request" (QWR) regarding the servicing of the loan "must" be sent to 967 US Highway 46, Suite 200, Kenvil, New Jersey.  Plaintiff alleges she did not receive Defendant's Notice because it also was sent to a nonexistent address.

---

[1] On April 25, 2014, Defendant provided Plaintiff's counsel with a copy of this Notice in response to counsel's request.

On September 4, 2015, Defendant provided a copy of Defendant's Notice to Plaintiff's counsel in response to counsel's request, and Plaintiff confirms she was in default on the loan as of September 26, 2013, the date of Defendant's Notice.

In October 2013 Plaintiff retained her current attorney to assist with the Kondaur foreclosure matter.  On December 20, 2013, the state court dismissed the Kondaur foreclosure action.

Plaintiff alleges she never received from Defendant any periodic billing statements or any notice of payment change based on the adjustable interest rate of her mortgage from the time Defendant became the servicer on her loan in August 2013.

In April 2014 Bridgestar filed a foreclosure action in state court against Plaintiff.  In December 2014 Plaintiff received a Payoff Statement from Defendant that provided the following information regarding Plaintiff's mortgage:  Note rate of 9.625; principal amount of $200,991.69; interest of $130,904.21 calculated to (but not including) 12/2/2014; outstanding late charges of $9,865.52; "advances" of $309.63; and a total due of $342,071.65.

On August 4, 2014, Plaintiff sent Defendant both a "Request for Information Pursuant to C.F.R. § 1024.35(b)(5) and U.S.C. § 1641(f)(2)" (RFI #1) and a separate "Request for Information Pursuant to 12 C.F.R. § 1024.36" (RFI #2).

4 – ORDER

Plaintiff sent these Requests to the address for QWRs as directed on Defendant's website (400 Morris Avenue, Suite 222, Denville, New Jersey), which was a different address than the one reflected in Defendant's September 26, 2013, Notice to Plaintiff.

On April 15, 2015, Plaintiff sent Defendant a "Notice of Error under 12 C.F.R. § 1024.35(b)(11) for failure to send written acknowledgment required by 12 C.F.R. § 1024.36(c); Notice of Error under 12 C.F.R. § 1024.35(b)(11) for failing to respond to borrower's request for information pursuant to 12 C.F.R. § 1024.36 and 15 U.S.C. § 1641(f)(2)" (NOE #1) and a "Notice of Error under 12 C.F.R. § 1024.35(b)(11) for failure to send written acknowledgment required by 12 C.F.R. § 1024.36(c); Notice of Error under 12 C.F.R. § 1024.35(b)(11) for failing to respond to borrower's request for information pursuant to 12 C.F.R. § 1024.36(d)" (NOE #2).

On April 23, 2015, Defendant sent a letter to Plaintiff regarding "[y]our letter received on 4/23/2015."  Defendant's letter "confirmed receipt of [Plaintiff's] letter and our response will be forthcoming within the next 30 to 45 days after we have completed our research."

Plaintiff alleges she received "undated correspondence with no cover letter" from Defendant on May 14, 2015, which consisted of copies of other correspondence and documents and "which may have been a response to NOE #1 and NOE #2."

On July 6, 2015, Plaintiff sent Defendant another "Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a notice of error in compliance with 12 C.F.R. §1024.35(e)" (NOE #3).

On July 15, 2015, the state court dismissed the Bridgestar foreclosure and awarded attorneys' fees and costs to Plaintiff.

On July 28, 2015, Defendant sent Plaintiff a letter "regarding your letter on 7/10/2015" and stated:

> Your request for information cannot be completed at this time due to:
>
> X    Your request is duplicative of a previous request: Regulation X 1024.35(g)(1)(i) & 1024.36(f)(1)(i)
>
> X    Your request is overbroad or unduly burdensome: Regulation X 1024.35(g)(1)(iii)
>
> Information requests pertain only to the servicing of your loan as defined by Regulation X 1024.2(b).  Any request outside of the scope of servicing of your loan will not be acknowledged.

FAC at Ex. 20.

On August 13, 2015, Bridgestar filed another foreclosure action[2] in state court against Plaintiff.

On August 26, 2015, Plaintiff sent Defendant another "Notice of error pursuant to 12 C.F.R. §1024.35(b)(11) for failure to properly respond to a notice of error in compliance with 12

---

[2] That action remained pending at the time Plaintiff filed her Complaint in this Court on February 12, 2016.

C.F.R. §1024.35(e)" (NOE #4).  In a letter dated September 4,

2015, Defendant acknowledged receipt of Plaintiff's August 26,

2015, letter and stated it did not have any payment history on

Plaintiff's mortgage because payments had never been made to

Defendant.

On February 12, 2016, Plaintiff, as noted, filed her

Complaint in this Court.

On March 9, 2016, the state court issued its order[3] on

Bridgestar's motion for summary judgment in the foreclosure

action.  The state court concluded Bridgestar had the legal

authority to foreclose on Plaintiff's property and that Plaintiff

was in default.

In Plaintiff's FAC she asserts 22 separate claims against

Defendant based on Defendant's actions or inactions in servicing

Plaintiff's mortgage:  Claims 1-11 for violation of the Real

Estate Settlement Procedures Act (RESPA), 12 U.S.C. § 2601, *et

seq.*, as set forth in Regulation X, 12 C.F.R. § 1024.1; Claims 12

and 13 for violation of the Truth in Lending Act (TILA), 15

U.S.C. § 1601, *et seq.*, as set forth in Regulation Z, 12 C.F.R.

§§ 1026.20 and 1026.41; Claim 14 for violation of the Fair Debt

Collections Practices Act (FDCPA), 15 U.S.C. § 1692, *et seq.*;

---

[3] Defendant submitted the state's order as an exhibit to the Request for Judicial Notice (#12).  Plaintiff did not object in her Response.  Accordingly, the Court takes judicial notice of the state-court order.

Claims 15 and 16 for contractual and tortious breach of the implied covenant of good faith and fair dealing; and Claims 17-22 for violation of the Oregon Unlawful Trade Practices Act (UTPA), Oregon Revised Statutes § 646.605, *et seq*.

Defendant moves to dismiss Plaintiff's Claims 2-22 for failure to state a claim.

## STANDARDS

To survive a motion to dismiss a complaint must contain sufficient factual matter, accepted as true, to "state a claim for relief that is plausible on its face." *Bell Atlantic v. Twombly*, 550 U.S. 544, 545 (2007). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id*. at 556. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)(quoting *Twombly*, 550 U.S. at 546). When a complaint is based on facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of entitlement to relief." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 557). *See also Bell Atlantic*, 550 U.S. at 555-56. The court must accept as true the

allegations in the complaint and construe them in favor of the plaintiff. *Din v. Kerry*, 718 F.3d 856, 859 (9th Cir. 2013).

The pleading standard under Federal Rule of Civil Procedure 8 "does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). *See also* Federal Rule of Civil Procedure 8(a)(2). "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* (citing *Twombly*, 550 U.S. at 555). A complaint also does not suffice if it tenders "naked assertion[s]" devoid of "further factual enhancement." *Id.* at 557.

"In ruling on a 12(b)(6) motion, a court may generally consider only allegations contained in the pleadings, exhibits attached to the complaint, and matters properly subject to judicial notice." *Swartz v. KPMG LLP*, 476 F.3d 756, 763 (9th Cir. 2007)(citing *Jacobson v. Schwarzenegger,* 357 F. Supp. 2d 1198, 1204 (C.D. Cal. 2004)). A court, however, "may consider a writing referenced in a complaint but not explicitly incorporated therein if the complaint relies on the document and its authenticity is unquestioned." *Id.* (quoting *Parrino v. FHP, Inc.,* 146 F.3d 699,706 (9th Cir. 1998), *superseded by statute on other grounds as stated in Abrego v. Dow Chem. Co.,* 443 F.3d 676 (9th Cir. 2006)).

## **DISCUSSION**

Defendant moves "for an order dismissing the First Amended Complaint." In its legal memorandum in support of the Motion, however, Defendant challenges only "Claims Two through Twenty-One." In her Response Plaintiff concedes she erroneously labeled the claims in her FAC by "accidentally label[ing] Claim 22 as Claim 21, where there was already a claim 21." Thus the Court will construe Defendant's Motion as a challenge to Claims 2-22 of Plaintiff's FAC.

As set out in Defendant's Motion, Plaintiff's claims can be categorized into five groups: (1) Claims 2-11 based on alleged violations of RESPA, (2) Claims 12 and 13 based on alleged violations of TILA, (3) Claim 14 based on alleged violations of FDCPA, (4) Claims 15 and 16 based on alleged breach of the duty of good faith and fair dealing, and (5) Claims 17-22 based on alleged violations of UTPA.

## I.   **Violations of RESPA (Claims 2-11)**

In this category of Claims Plaintiff alleges Defendant willfully and intentionally failed to acknowledge receipt or to respond properly and completely to Plaintiff's RFIs and NOEs in violation of Regulation X of RESPA. 12 C.F.R. §§ 1024.35(d) and 1024.36(c) require a mortgage servicer to acknowledge receipt of an RFI or NOE within 5 days of receipt of such request or notice.

The Regulations also require a servicer to respond to such request or notice by providing information within a specified time.  12 C.F.R. §§ 1024.35(e) and 1024.36(d).

Defendant argues Plaintiff's claims for violation of RESPA do not state a claim because (1) the regulations on which Plaintiff relies do not provide Plaintiff with a private right of action and (2) the correspondence that Plaintiff sent to Defendant were not sent to the address designated for a QWR. Plaintiff, in turn, contends she has a private right of action under the regulations and that her notices were sent to an address for QWRs designated by Defendant on its public website.

A.   **Private Right of Action**

Section 6 of RESPA, codified at 12 U.S.C. § 2605, requires a loan servicer to comply with certain disclosure requirements when a QWR is received from the borrower.  On January 10, 2014, new regulations were enacted in the form of the Dodd-Frank Wall Street Reform and Consumer Protection Act of 2010, Pub.L. No. 111-203, 124 Stat. 1376 (July 21, 2010), which became known as Regulation X of RESPA[4] and codified at Title 12

---

[4] "Congress gave the Department of Housing and Urban Development (HUD) authority to regulate under RESPA, and HUD promulgated the corresponding regulations known as Regulation X. The Dodd-Frank Wall Street Reform and Consumer Protection Act transferred the regulatory authority of RESPA from HUD to the Consumer Financial Protection Bureau (CFPB), and CFPB later republished Regulation X without material changes." *Edwards v. First Am. Corp.*, 798 F.3d 1172, 1179 (9th Cir. 2015)(concerning anti-kickback provision of RESPA).

C.F.R. § 1024.

Regulation X was promulgated pursuant to Section 6 of
RESPA and subject to Section 6(f), which gives borrowers a
private right of action to enforce such regulations.  *See* 78 Fed.
Reg. at 10715 n.64.  These regulations, which were promulgated by
the Agency charged with regulatory authority under RESPA rather
than by the Legislature, constitute the basis of a claim for
violation of RESPA.

Defendant contends the regulations "on their face" do
not reference any enforcement provision.  Although the Ninth
Circuit has not directly addressed this issue, Defendants rely on
decisions from district courts in other jurisdictions to support
its position.

For example, in *Watson v. Bank of America, N.A.,* No.
16cv513-GPC, 2016 WL 3552061 (S.D. Cal. June 30, 2016), the
plaintiff brought a claim for violation of Regulation X under
RESPA.  The plaintiffs alleged they sent several RFIs and NOEs to
both the bank and loan servicer pursuant to Regulation X while
awaiting a decision from the bank regarding a modification of
their loan.  The plaintiffs asserted the defendants violated
RESPA by failing to acknowledge receipt, failing to respond to
the plaintiffs' requests and notices, and/or failing to respond
accurately to the plaintiffs' requests and notices.  When
addressing the defendants' motion to dismiss for failure to state

a claim, the court specifically analyzed each request and notice sent by the plaintiffs for compliance with §§ 1024.35 and 1024.36 of Regulation X.  The court concluded some of plaintiffs' allegations were sufficient to state a claim while others were not.  Accordingly, the court granted in part and denied in part the defendants' motion to dismiss plaintiffs' claims for violation of Regulation X.  Although the *Watson* court did not address the specific issue of standing, it implicitly recognized by its detailed analysis of each claim for compliance with the regulations that there was a basis for asserting such claims.

Here Plaintiff brings claims in her FAC "for violations of the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA)."  FAC at ¶ 2.  In Claims 2-11 Plaintiff alleges violations of the specific regulations as to each RFI and NOE sent to Defendant by Plaintiff.

On this record the Court concludes Plaintiff has standing to assert claims for violation of these regulations.

**B.  Address for Notices**

Defendant argues even if Plaintiff has a private right of action pursuant to the Regulations, Plaintiff did not send her RFIs and NOEs to the address designated by Defendant in its Notice of Assignment, Sale, or Transfer of Servicing Rights that was mailed to Plaintiff on September 26, 2013.  As noted, however, Plaintiff contends she never received Defendant's Notice

because it was mailed to a nonexistent address, and Plaintiff asserts her later mailings to Defendant were sent to an address designated on Defendant's website for such notices.

RESPA is a consumer-protection statute. *Freeman v. Quicken Loans, Inc.*, 132 S. Ct. 2034, 2038 (2012). RESPA imposes short time-frames for mortgage servicers to respond to potentially detailed inquiries. To aid servicers with the task of providing consumers with timely information, RESPA's implementing regulations allow, but do not require, servicers to establish a designated address for QWRs. *See* 24 C.F.R. § 3500.21(e)(1)("By notice either included in the Notice of Transfer or separately delivered by first-class mail, postage prepaid, a servicer may establish a separate and exclusive office and address for the receipt and handling of qualified written requests."). The final rulemaking notice for Regulation X explained if a servicer establishes a designated QWR address, "then the borrower must deliver its request to that office in order for the inquiry to be a 'qualified written request.'" Real Estate Settlement Procedures Act, Section 6, Transfer of Servicing of Mortgage Loans (Regulation X), 59 Fed. Reg. 65442, 65446 (Dec. 19, 1994).

As noted, even though Defendant's Notice designated a specific address for such requests, that Notice was not sent to the Plaintiff at an address where she would receive it. In any

event, Plaintiff's allegation that she sent her requests to the
address designated by Defendant on its website for such requests
is sufficient under Federal Rules of Civil Procedure 8 to state a
"plausible" claim at this stage of the proceedings.

On this record, therefore, the Court concludes Plaintiff has
sufficiently stated claims for relief in Claims 2-11 that are
plausible on their face, and, accordingly, the Court denies
Defendant's Motion to Dismiss as to Plaintiff's Claims 2-11.

## II.  <u>Violation of TILA (Claims 12 and 13)</u>

In Claims 12 and 13 Plaintiff asserts Defendant failed to
provide disclosures related to the interest rate charged as
required by § 1026.20(c) and failed to provide periodic
statements to borrowers as required by § 1026.41 of Regulation Z
under TILA.  In its Reply Defendant withdrew its argument related
specifically to § 1026.41.  Defendant, however, maintains
Plaintiff does not have standing to enforce § 1026.20(c).

The enforcement of and liability under Regulation Z is set
forth in 12 C.F.R. § 1026.1(e), which states:

> **Enforcement and liability.**  Section 108 of the Truth in
> Lending Act contains the administrative enforcement
> provisions for that Act.  Sections 112, 113, 130, 131,
> and 134 contain provisions relating to liability for
> failure to comply with the requirements of the Truth in
> Lending Act *and the regulation*.

Emphasis added.  Section 130 of TILA was codified at 15 U.S.C.
§ 1640 and allows damages for violations of the statute
including, among others, § 1638 related to required disclosures

15 – ORDER

in credit transactions.  Paragraph (f) of § 1638 requires the
servicer to provide periodic statements to the borrower.  The
statute lists the required information for those statements,
including current interest in effect for the loan, the date on
which the interest rate may next reset or adjust, and "such other
information as the Board may prescribe in regulations."  15
U.S.C. § 1638(f)(1)(H).  The language of § 1638 closely follows
the requirements of § 1026.20(c) of Regulation Z, which requires
the servicer of an adjustable-rate mortgage "to provide borrowers
with disclosures in connection with the adjustment of interest
rates pursuant to the loan contract that results in a
corresponding adjustment to the payment."

Based on the language of Section 130 of TILA and Regulation
Z as codified in 15 U.S.C. § 1640, the Court concludes Plaintiff
has standing to enforce the alleged violations of these
regulations as set forth in Claims 12 and 13.  The Court,
therefore, denies Defendant's Motion to Dismiss as to these
claims.

## III. <u>Violation of FDCPA (Claim 14)</u>

In Claim 14 Plaintiff alleges Defendant violated the FDCPA
by "withhold[ing] information that [Defendant] was legally
required to provide to [Plaintiff] through monthly statements,
interest rate adjustment notices, and responses to requests for
information."  Defendant argues Plaintiff's Complaint is

deficient because (1) Plaintiff fails to allege facts supporting the elements of a FDCPA action; (2) Plaintiff's claim is barred by the one-year statute of limitations; and (3) the communications by Defendant were statutorily mandated communications and unrelated to a debt collection and, therefore, do not support a violation of FDCPA.

### A.    Failure to State a Claim

To state a claim under the FDCPA, a plaintiff must allege (1) she has been the object of collection activity arising from a consumer debt, (2) the defendant is a debt collector, (3) and the defendant's conduct is prohibited by the FDCPA. *Lampshire v. Bank of Am., N.A.*, No. 6:12-cv-01574-AA, 2013 WL 1750479 (D. Or. April 20, 2013)(internal citations and quotes omitted).

In her Complaint Plaintiff alleges Defendant was a debt collector (FAC at ¶ 14), engaged in the collection of debt "in connection with its servicing obligations under the loan" (FAC at ¶ 307), and violated the provisions of the FDCPA in numerous ways (FAC at ¶¶ 308-24). Defendant, however, contends Plaintiff's allegations that Defendant failed to communicate with her do not constitute a violation of FDCPA.

The plaintiffs in *Morgovsky v. Creditor's Collection Service* alleged the defendants communicated false information by failing to report that the debt in question was disputed. No. C-

92-0546-VRW, 1995 WL 316970 (N.D. Cal. May 16, 1995).  The district court found "the 'failure to communicate that a disputed debt is disputed' would constitute a violation of FDCPA," but the court concluded the plaintiffs failed to produce evidence that they had given proper notice of the disputed debt to the defendant.  *Id.,* at *2.

A claim under the FDCPA is generally stated in terms of affirmative conduct that violates the statute.  Section 1692d, however, provides a debt collector may not engage in "any conduct" that would harass, oppress, or abuse any person in connection with the collection of a debt.  As indicated in *Morgovsky,* this could include the failure of a debt collector to take a required action.

On this record the Court concludes Plaintiff's Claim 14 states a claim for relief that is plausible on its face.

**B.   Statute of Limitations**

Defendant also argues any alleged violations that occurred more than one year before the filing of this action are barred by the statute of limitations.  Plaintiff does not dispute the applicable statute of limitations, but she asserts all of her claims arose within the year before filing her Complaint.

In her FAC Plaintiff alleges Defendant failed to identify itself as a debt collector in its initial letter of September 26, 2013, and included false and misleading

representations.  (FAC at ¶¶ 313, 314).  Those alleged violations
of the FDCPA, however, occurred more than one year before the
filing of Plaintiff's Complaint and, therefore, are barred.
Nevertheless, Plaintiff alleges other communications by Defendant
occurred within one year of the filing of Plaintiff's Complaint;
that they violated the provisions of the FDCPA; and, therefore,
those communications are not time barred.  Assuming these
allegations are true for the purposes of Defendant's Motion, the
Court concludes Plaintiff's FAC does not state a time-barred
claim.

> **C.    Statutory Communications**

Defendant also asserts their communications to
Plaintiff were statutorily mandated; unrelated to debt
collection; and, therefore, do not support a violation of FDCPA.
In response Plaintiff argues any communication "motivated by
collection of the debt" that fails to provide required
disclosures and information or is false and misleading violates
the FDCPA.

Plaintiff alleges Defendant did not identify itself as
a debt collector in communications dated July 28 or September 4,
2015.  FAC at ¶ 315, Exs. 20, 23.  Defendant's letter to
Plaintiff dated July 28, 2015, is merely an acknowledgment of
receipt of Plaintiff's letter requesting information and advises
Plaintiff that her request was incomplete.  The September 4,

2015, letter provides in part the information that Plaintiff requested from Defendant.

In *Santoro v. CTC Foreclosure Service* the court concluded "only communications 'in connection with the collection of any debt' fall under the ambit of the [FDCPA]."  12 F. App'x 476, 479 (9th Cir. 2001).  The court found the defendant's letter suggesting loan work-out options and containing a statutorily required notice of the pending foreclosure sale of property was not a collection letter.

On this record the Court concludes neither the July 28, 2015, nor the September 4, 2015, letter constitutes "debt collecting" as contemplated in the statute.  Accordingly, the Court concludes Plaintiff has failed to state a claim pursuant to the FDCPA based on the fact that Defendant did not identify itself as a "debt collector" in these particular communications, and the Court grants Defendant's Motion to Dismiss as to Plaintiff's FDCPA Claim 14 to the extent that it is based on activity or communications before February 12, 2015, or on the correspondence dated July 28, 2015, and September 4, 2015.  The Court denies Defendant's Motion to Dismiss as to the remainder of Plaintiff's Claim 14.

**IV.**   **Breach of Good Faith and Fair Dealing (Claims 15 and 16)**

   **A.**   **Implied Contractual Obligation of Good Faith and Fair Dealing (Claim 15)**

Defendant contends Plaintiff does not state a claim for

breach of an implied contractual obligation of good faith and fair dealing because there was not a contract between the parties.  Plaintiff, however, contends Defendant was acting as the agent of the owner/assignee of her loan, and, therefore, a contract between the parties existed.

A claim for breach of the implied contractual obligation of good faith and fair dealing requires the existence of a contract between the parties.  *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. 2d 1085, 1091 (D. Or. 2011).  Here Plaintiff alleges only that Defendant was acting in the scope of its agency as the agent/servicer for the owner of the loan mortgage.  FAC at ¶ 329.  A loan servicer, however, is not a party to a deed of trust.  *Lomboy v. SCME Mortg. Bankers*, No. C-09-1160-SC, 2009 WL 1457738, at *5 (N.D. Cal. May 26, 2009).  Because Plaintiff does not allege facts that establish the existence of a contract between the parties and does not name as a party an entity with whom Plaintiff contracted and as to whom Defendant allegedly served as an agent, the Court concludes Plaintiff has failed to state a claim for breach of the implied obligation of good faith and fair dealing.  The Court, therefore, grants Defendant's Motion to Dismiss as to Plaintiff's Claim 15 with leave to replead.

**B.    Tortious Breach of Covenant of Good Faith and Fair Dealing (Claim 16)**

To state a claim for tortious breach of the covenant of

good faith and fair dealing Plaintiff must allege Defendant's conduct violated some standard of care that is not part of an explicit or implied contractual obligation and that the independent standard of care stems from "a particular special relationship" between the parties. *Rapacki v. Chase Home Fin. LLC*, 797 F. Supp. at 1091. A loan servicer-borrower relationship is not a special one. *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1132 (D. Or. June 17, 2014)(*citing Garner v. Bank of Am. Corp.*, No. 2:12-cv-02076-PMP-GWF, 2014 WL 1945142, at *7 (D. Nev. May 13, 2014)("[a]bsent unique circumstances, lenders and loan servicers are not in a special relationship with borrowers").

Plaintiff does not allege any facts in her FAC that establish a special relationship between herself and Defendant. Instead Plaintiff asserts Defendant's duty of good faith and fair dealing arises from Defendant's obligation as a loan servicer to comply with "federal law [under FDCPA, RESPA, TILA, and UTPA] and the terms of the Note and Deed to Trust." FAC at ¶¶ 335, 336. Plaintiff, however, does not cite any authority to support her position. Although the above statutes may give rise to claims for violation of an entity's statutory duties, there is not any authority that specifically indicates such violations would give rise to a claim of tortious breach of good faith and fair dealing.

Accordingly, on this record the Court grants Defendant's Motion to Dismiss Plaintiff's Claim 16.

**V.    Violations of UTPA (Claims 17-22)**

Finally, Plaintiff asserts in Claims 17-22 that Defendant violated Oregon's Unlawful Trade Practices Act.  Plaintiff contends Defendant's violation of RESPA also constitutes a violation of UTPA because Defendant failed to respond to each of Plaintiff's NOEs, failed to acknowledge receipt of NOE #3, and failed to deal with Plaintiff in good faith.

Defendant, in turn, argues Claims 17-22 fail on the grounds that (1) Defendant did not violate RESPA, (2) Plaintiff lacks standing to pursue her claims under UTPA, and (3) Plaintiff's claims are barred by the one-year statute of limitations.

**A.    Violations of RESPA**

The Court concluded in Section I that Plaintiff adequately pleaded a claim under RESPA.  The Court concludes, therefore, Plaintiff has adequately pleaded claims for violation of UTPA to the extent that those claims arise from RESPA violations.

**B.    Lack of Standing**

Defendant contends Plaintiff lacks standing to pursue her claims under UTPA because the loan that is the basis of this action was obtained in 2005 and the provisions of UTPA were not made applicable to "loans and extensions of credit" until 2010.

The court in *Roisland v. Flagstar Bank, FSB*, found UTPA did not apply to a claim arising under a loan obtained in 2009.  989 F. Supp. 2d 1095, 1108 (D. Or. November 26, 2013)(citing *Lamm v. Amfac Mortg. Corp.*, 44 Or. App. 203, 204 (1980), and *Haeger v. Johnson*, 25 Or. App. 131, 132 (1976)). UTPA is inapplicable to any loan transaction that occurred before its amendment in 2010.  *Mikityuk v. Northwest Trustee Svcs.*, Inc., 952 F. Supp. 2d 958, 961 (D. Or. 2013).  UTPA was amended to include "loans and extensions of credit" effective March 23, 2010.  Or. Rev. Stat. § 646.605(6), *as amended by* Or. Laws. Spec. Sess. Ch. 94 § 1 (2010).

Regardless, Plaintiff's UTPA claim arises from the loan she received and the deed of trust granted in 2005, which is before the effective date of these amendments.  The Court, therefore,  concludes on this record that Plaintiff cannot state a claim for violation of UTPA based on her loan of 2005. Accordingly, the Court grants Defendant's Motion to Dismiss Claims 17-22.

Defendant also argues Plaintiff cannot establish an ascertainable loss to support her UTPA claim.  Inasmuch as the Court has concluded Plaintiff cannot assert a claim under UTPA due to the timing of Plaintiff's loan, the Court need not address this issue.

C.    **Statute of Limitations**

The statute-of-limitations issue raised by Defendant is moot in light of the fact that the Court has concluded Plaintiff cannot maintain her UTPA claim.

<u>CONCLUSION</u>

For these reasons, the Court **GRANTS in part** and **DENIES in part** Defendant's Motion (#11) to Dismiss as follows:

(1) **DENIED** as to Claims 2-11 based on alleged violations of RESPA;

(2) **DENIED** as to Claims 12 and 13 based on alleged violations of TILA;

(3) **GRANTED** and **DISMISSED with prejudice** as to Claim 14 for alleged violations of FDCPA only as to those allegations based on conduct before February 12, 2015, or based on the communications of July 28, 2015, and September 4, 2015, and **DENIED** as to the remainder of Claim 14;

(4) **GRANTED with leave to replead** as to Claim 15 based on alleged contractual breach of the duty of good faith and fair dealing and **GRANTED** as to Claim 16 based on alleged tortious breach of the duty of good faith and fair dealing and **DISMISSED with prejudice**;

(5) **GRANTED** as to Claims 17-22 based on alleged violations

of UTPA and **DISMISSED with prejudice**.

The Court **GRANTS** Plaintiff leave to amend her Complaint no later than **October 11, 2016,** as to Claim 15 only as set out in this Opinion and Order.

IT IS SO ORDERED.

DATED this 7th day of September, 2016.

/s/ Anna J. Brown

_____

ANNA J. BROWN
United States District Judge